IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANICE A. EDWARDS, an individual   *

    Plaintiff,   *

v.   *   Case No.: 1:13-cv-709 RJL

OCWEN LOAN SERVICING, LLC and   *
OCWEN FINANCIAL CORPORATION
   *
    Defendants.
   *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiff filed a 127-paragraph, eleven-count Complaint against Ocwen Loan Servicing, LLC and Ocwen Financial Corporation[1] (collectively, "Ocwen") arising from the servicing of a mortgage that she took out to finance a property in which she did not live. Plaintiff uses her pleading as a soap box, wasting several pages (and numerous paragraphs) attacking Ocwen's purported loan servicing methods and business practices. Indeed, Plaintiff chooses to try to inflame the court against Ocwen through *ad homonym* attacks employing words such as "scheme", "chicanery", "egregious and outrageous", "illegal, unfair and unlawful", "predatory" and "abusive and deceptive".

However, as detailed below, when all of the venomous rhetoric is scrubbed from the pleading, what remains is a Complaint in which Plaintiff fails to state a claim against Ocwen

---

[1] Ocwen Financial Corporation is not a loan servicer and was improperly named as a defendant.

under any of the eleven counts therein. Thus, the Complaint should be dismissed in its entirety with prejudice.

## FACTS

As this is a motion to dismiss pursuant to Rule 12(b) (6), the relevant facts are those alleged in the Complaint. Here, Plaintiff alleges that she refinanced the property at issue, which was not her principal residence. *See* E.C.F. No. 1 at ¶¶20, *Id.* at 1-4 and Closing Certificate (Exhibit D), of the Plaintiff's Complaint. Litton Loan Servicing ("Litton"), allegedly failed to pay property taxes on her property from the funds that Plaintiff paid into her mortgage escrow account. E.C.F. No. 1 at ¶¶ 21-22, 24. After the property was sold at a tax sale, Ocwen took over servicing of the loan. *Id.* at ¶¶ 25-27 Plaintiff then wrote to Ocwen informing it of the tax sale and seeking an explanation for why the property had been sold and why the taxes had not been paid, but did not receive a response. *Id.* at ¶¶31-32.

Ocwen redeemed the property and then sought to recover the funds it had paid to redeem the property from Plaintiff through increased escrow payments which Plaintiff claims were impermissibly high. *Id.* at ¶¶ 34-43. Plaintiff also claims that Ocwen improperly force-placed hazard insurance on the property and sought reimbursement for the premiums from her. *Id.* at ¶ 35. Ultimately, Plaintiff claims that because she could not afford to make the increased payments, she was forced to sell the property. *Id.* at ¶¶ 44-46. According to Plaintiff, at closing, money from the proceeds of the sale was *improperly* paid to the lender for the escrow arrears. *Id.* at ¶ 47.

## LEGAL STANDARD

A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted if, after construing the complaint liberally in the plaintiffs favor, the

Court concludes "no set of facts in support of his claim would entitle him to relief." *Kaemmerling v. Lappin*, 553 F.3d 669, 676-77 (D.C. Cir. 2008). The court "need not accept inferences unsupported by the facts alleged in the complaint or 'legal conclusions cast in the form of factual allegations.'" *Id.* at 677. A motion to dismiss for failure to state a claim should be granted if the plaintiff has failed to allege enough facts, taken as true, to suggest that the plaintiff is entitled to relief. *See City of Moundridge v. Exxon Mobil Corp.* 250 F.R.D. 1, 4 (D.D.C. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). This standard imposes neither heightened pleading standards nor a probability requirement at the pleading stage, but it does call "for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the alleged tort. *Id.* (quoting *Bell Atlantic Corp.*, 127 S. Ct. at 1965) (alteration in original). In sum, Plaintiff must allege sufficient facts to "nudge [their] claims across the line from conceivable to plausible." *Bell Atlantic Corp.*, 127 S. Ct. at 1974.

## ARGUMENT

### I. Plaintiff Fails to State A Claim under the Fair Debt Collection Practices Act (Count 1) because There Was No Attempt to Collect a Debt and Ocwen is Not a Debt Collector

Plaintiff's claim under the Fair Debt Collection Practices Act, 15 U.S.C.A. §1692, et seq. ("FDCPA") must be dismissed for two separate reasons. First, the mortgage at issue in this case was not secured by Plaintiff's residence, it was an investment property. Thus, it was not a "debt" as defined by the FDCPA. Second, Ocwen, a mortgage servicer, does not meet the statute's definition of "debt collector".

#### A. The Mortgage on Plaintiff's Property Was Not A Debt Under the FDCPA

As alleged in the Complaint, the property securing the mortgage at issue was not Plaintiff's residence. *See* E.C.F. No. 1-4 (stating that the property to which the loan related was

3

not to be occupied by Plaintiff as her primary residence) and Closing Certificate (Exhibit D), of the Plaintiff's Complaint. Furthermore, she took out the loan at issue "[t]o refinance outstanding debt for the property…" *Id.* Thus, the mortgage at issue, and the expenses flowing from Plaintiff's ownership of the property that Ocwen allegedly sought to recover, do not constitute a "debt" under the FDCPA.

The FDCPA defines "debt" as follows:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C.A. § 1692a (5).

Therefore, the FDCPA required the property to be primarily for personal, family or household purposes. Because the loan in this case was a refinance of a business/investment property not an owner-occupied residence, it is not a "debt" as defined by the FDCPA. *See Sparlin v. Select Portfolio Servicing, Inc.*, 2102 WL 527486 (D. Ariz. Feb. 17, 2012) (dismissing claim under FDCPA without leave to amend where note was obtained for investment purposes); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) ("The Act characterizes debts in terms of end uses, covering debts incurred 'primarily for personal, family or household purposes.'"); *Aniel v. TD Serv. Co.*, 2011 WL 109550, at *4 (N.D. Cal. Jan 13, 2011) ("This action arises out of a mortgage loan on a rental property, and that loan is not a 'debt' covered by the FDCPA.").

### B. Ocwen is not a "Debt Collector" as defined by the FDCPA

Ocwen is not a "debt collector" as defined by the FDCPA.

"Debt Collector" is defined by the FDCPA as follows:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C.A. § 1692a (6).

Numerous courts have held that a mortgage servicing company, like Ocwen, is not a "debt collector" under the FDCPA as long as the debt was not in default at the time it was assigned. *See, e.g., Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of debt, as long as the debt was not in default at the time it was assigned."); *Costine v. BAC Home Loans*, 2013 WL 2248098, *4 (N.D. Ala. May 21, 2013) ("Furthermore, the legislative history suggests that a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage holder acquires the debt."); *Ogle v. BAC Home Loan Servicing LP*, 2013 WL 592303, *5 (S.D. Oh. Feb. 14, 20130 ("An entity that services the loan is treated as a 'creditor' and generally is not subject to the FDCPA, when the debt was not in default at the time it was assigned.") (*citing Johnson v. Sallie Mae Servicing Corp.*, 102 Fed. App'x 484, 487 (7th Cir.

2004)); *Clifton v. Citimortgage, Inc.*, 2011 WL 891317, *5 (D.S.C. Mar. 11, 2011) ("stating that the legislative history "indicates that the definition of debt collector is not intended to cover mortgage service companies and others who service outstanding debt for others, so long as the debts were not in default when taken for servicing"); *Cyphers v. Litton Loan Servicing, L.L.P.*, 503 F. Supp.2d 547, 551-52 (N.D.N.Y. 2007) (granting Litton Loan Servicing's motion for summary judgment on basis that FDCPA did not apply to it).

Here, according to Plaintiff's Complaint, her loan was assigned to Litton for servicing after it was refinanced in 2003. *See* E.C.F. No. 1 at ¶22. Ocwen then became the servicer of the loan in 2011. *Id.* at ¶27. According to Plaintiff's allegations, she was not in default in August 2011. Indeed, according to Plaintiff, she was current with her escrow payments throughout 2011. *See* E.C.F. No. 1-2 at 2 of 8. There is no allegation in the Complaint that either the lender or Ocwen considered Plaintiff to be in default, or attempted to collect any alleged escrow arrears until well after Ocwen began servicing the loan. In fact the first reference in the Complaint to a default is in paragraph 36 in which Plaintiff alleges that "in late-2012, the defendants falsely claimed Edwards' [sic] was in default..." This was well after Ocwen took over servicing of the loan. Because Ocwen is not a "debt collector" under the FDCPA, Plaintiff's claim must be dismissed.

II.   **Plaintiff Fails to State A Claim Under the Real Estate Settlement Procedures Act (Count 2)Because the Act Does Not Apply To Non-Owner-Occupied Properties**

Plaintiff also fails to state a claim under the Real Estate Settlement Procedures Act, 12 U.S.C.A. §2601, *et seq.* ("RESPA") because the loan was made for investment/business purposes. By its terms, RESPA does not apply to investment properties, *i.e.*, properties that a debtor is using for income and not as a residence. RESPA states as follows:

> (a) In general
> This chapter does not apply to credit transactions involving extensions of credit--
> (1) primarily for business, commercial, or agricultural purposes; or
> (2) to government or governmental agencies or instrumentalities.

12 U.S.C.A. § 2606.

Here, Plaintiff concedes that the property was not her residence. *See* E.C.F. No. 1-4 (stating that the property to which the loan related was not to be occupied by Plaintiff as her primary residence) and Exhibit "D", Closing Certificate, of the Plaintiff's Complaint (the Closing Certification indicates that the property is not and will not be occupied by the Borrower as a principal residence). Courts, including this Court, have held that mortgages that were for non-owner-occupied rental properties were business purpose loans and were not governed by RESPA.

In *Henok v. Chase Home Fin., LLC*, 2013 WL 2352104 (D.D.C. May 30, 2013) (Roberts, J.), this Court granted summary judgment to the defendant as to plaintiff's RESPA claims. In so doing, the court noted that the property at issue was not occupied by the borrower but rather was used as a rental property. The court stated:

> RESPA provides that if the loan servicer receives a "qualified written request" from the borrower for information about his loan, the servicer is required to provide "a written response acknowledging receipt of the correspondence[.]" 12 U.S.C. § 2605(e)(1)(A). However, RESPA "does not apply to credit transactions involving extensions of credit ... primarily for business, commercial, or agricultural purposes[.]" 12 U.S.C. § 2606(a). In interpreting this provision, courts have found that RESPA does not apply to loans for non-owner occupied rental properties. *See, e.g., Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir.2011); *Ford v. Central Loan Admin.*, No. 11-0017-WS-C, 2011 WL 4702912, at *4 & n. 8 (S.D.Ala. Oct. 5, 2011).

*Id.* at *1-2.

In *Johnson v. Wells Fargo Home Mortgage, Inc.*, 635 F.3d 401, 417-19 (9th Cir. 2011), the appellant filed a claim under RESPA relating, *inter alia*, to mortgages on rental properties.

7

The district court granted summary judgment as to his RESPA claims. On appeal, the Ninth Circuit discussed the regulations relating to RESPA and concluded that because the properties at issue were non-owner-occupied rental properties, RESPA did not apply to them. *Id. See also Sparlin*, 2012 WL 527486 at *13 ("Courts applying [§ 2606] uniformly hold that RESPA 'does not apply to mortgage transactions involving investment properties because such transactions constitute business and/or commercial purposes.'") (*quoting Johnson*, 635 F.3d at 417)); *Daniels v. SCME Mortgage Bankers, Inc.*, 680 F. Supp.2d 1126 (C.D. Cal. 2010 (borrower could not pursue RESPA claim where he checked on loan application that loan was for "investment" and property at issue was not owner occupied).

Because Plaintiff concedes in her Complaint that the property at issue was not owner-occupied, RESPA is inapplicable to the transaction described in the Complaint and Count 2 must be dismissed.

Alternatively, Plaintiff's RESPA claim must be denied because she fails to sufficiently plead damages caused by Ocwen's alleged violation of the statute. *See Ogle v. BAC Home Loans Servicing LP*, 2013 WL 592303 (S.D. Oh. Feb. 14, 2013) (holding that to withstand a Rule 12 (b) (6) motion, the borrower must allege actual damages arising from the RESPA violation). Here, in support of her RESPA claim, Plaintiff alleges, in conclusory fashion, that she is "entitled to actual damages in that she was forced to sell her home to avoid Defendants' wrongful foreclosure." *See* E.C.F. No. 1 at ¶80. She provides no facts as to how she was damaged by selling her home, nor does she claim that she lost money as the result of the sale. Thus, her RESPA claim must be dismissed.

### III. Plaintiff Fails to State A Claim for Breach of Contract (Count 3) or Breach of the Covenant of Good Faith and Fair Dealing (Count 5) because She Had No Contract with Ocwen

Plaintiff fails to state a claim for breach of contract or for a breach of the covenant of good faith and fair dealing which flows from a contractual relationship, because she fails to make factual allegations showing that a contract existed between her and Ocwen. "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 187 (D.C. 2009). Here, Plaintiff's claim against Ocwen fails to meet the first requirement of *Tsintolas* because, while she states in conclusory fashion that "[a] valid and enforceable contract existed between the parties," E.C.F. No. 1 at ¶ 85, she alleges no facts regarding the formation of a contract between herself and Ocwen (or Ocwen's alleged predecessor, Litton Loan Servicing). Rather, at various points in the Complaint, Plaintiff acknowledges that her loan was with SouthStar Funding, LLC, and that both Litton and Ocwen were merely servicers of her loan. *See, e.g.,* E.C.F. No. 1 at ¶¶ 20, 22, 29.

As loan servicers, Litton and Ocwen were merely acting as disclosed agents of the lender and, absent Ocwen (or Litton) separately binding themselves through definite words or stipulation, neither of which is alleged here, neither can be liable for breach of the contract that Plaintiff claims to have with the lender. *See Robinson v. Deutsche Bank Nat. Trust Co.,* 2013 WL 1191034 (D.D.C. Mar. 25, 2013). In *Robinson*, the plaintiff's complaint included a claim for breach of contract against Saxon, the loan servicer. In dismissing the claim under Rule 12 (b)(6), the court rejected plaintiff's argument that Saxon was liable for breach of contract as the agent for the lender, stating as follows:

> But this argument fails as a matter of law. In the District of Columbia:
> Where a principal is disclosed, no liability will fall upon the agent for acts

9

> committed by the principal unless he binds himself for same by definite words or stipulation. Nor does liability attach to an agent of a disclosed principal for his act within the scope of the agency unless he binds himself by definite words or stipulation. *Rittenberg v. Donohoe Constr. Co.*, 426 A.2d 338, 341 (D.C.1981) (citations omitted). Here, Robinson does not allege that he had a contractual relationship with Saxon, or that the agency relationship between Saxon and the lenders was not disclosed to him. Compl. ¶¶ 49–50 (demonstrating that Robinson knew Saxon was an agent of Chase and Deutsche Bank). Therefore, there is no legal basis for his breach of contract claim against Saxon, and the Court will dismiss it under Fed.R.Civ.P. 12(b)(6).

*Id.* at *10.

Here, Plaintiff acknowledges that she was aware that both Litton and Ocwen were acting as loan servicers and fails to allege facts demonstrating the formation of a contractual relationship directly with Litton or Ocwen, *i.e.*, that Litton or Ocwen bound themselves "through definite words or stipulation." Thus, while there may have been a contract between Ocwen and the lender, there was no contract between Ocwen (the servicer) and Plaintiff.

Because there was no contract between Ocwen and Plaintiff, Count V of the Complaint, alleging a breach of the duty of good faith and fair dealing, also fails as a matter of law because "in the District, 'a claim for breach of the implied covenant of good faith and fair dealing cannot exist in the absence of a contractual relationship.'" *See Robinson*, 2013 WL 1191034 at *13 (quoting *Busby*, 772 F.Supp.2d at 284 (internal citations omitted)).

### IV.    Plaintiff Fails to State Claim for Unjust Enrichment (Count 4) Because The Complaint Does Not Allege That Ocwen Received Any Money From Plaintiff

The gravamen of Plaintiff's unjust enrichment claim appears to be that certain funds disbursed at settlement when Plaintiff sold her property were unjustly retained by Ocwen. *See* E.C.F. No.1 at ¶¶47, 89-93. However, Plaintiff acknowledges in her Complaint that Ocwen was merely the servicing agent for her loan, not the lender. Thus, Plaintiff has failed to plead facts sufficient to show that Ocwen was unjustly enriched by the money disbursed at settlement (and

presumably disbursed pursuant to a HUD-1). "Unjust enrichment occurs 'when a person retains a benefit (usually money) which in justice and equity belongs to another.'" *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 151 (D.D.C. 2011) (*quoting Griffith v. Barnes*, 560 F.Supp.2d 29, 34 (D.D.C.2008)) (internal quotations omitted). "Where that is the case, 'the recipient of the benefit has a duty to make restitution to the other person if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it.'" *Id.* (quoting *4934, Inc. v. Dist. of Columbia Dep't of Emp't Servs.*, 605 A.2d 50, 55-56 (D.C.1992)). Here, Plaintiff has a failed to plead facts sufficient to support her claim that any of the money disbursed by Plaintiff's settlement agent was retained by Ocwen.

In *Jackson v. Ocwen Loan Servicing*, 2010 WL 3294397 (E.D. Cal. Aug. 20, 2010), the plaintiffs brought claims against Ocwen arising from its conduct with regard to the loan on their residential property, including a claim for unjust enrichment. Plaintiffs claimed that Ocwen "unjustly enriched itself at the expense of Plaintiffs' investment in their home" and that Ocwen "reaped substantial profits." *Id.* at *6. The court dismissed the unjust enrichment claim noting that "Defendant is the servicer of Plaintiff's loan, not the beneficiary of the Note or deed of Trust. Plaintiffs fail to sufficiently plead unjust enrichment." Here, as in *Jackson*, Plaintiff merely alleges that Ocwen received wrongful benefit at her expense. Because here, as it was in *Jackson*, Ocwen is merely the loan servicer, Plaintiff's unjust enrichment claim must be dismissed.

### V. Plaintiff Failed to State a Claim For Breach of Fiduciary Duty (Count 6) because Ocwen Owed no Duty to Plaintiff

Plaintiff's claim for breach of fiduciary duty must be dismissed because Ocwen did not have a fiduciary relationship with Plaintiff. In *Busby v. Capital One, N.A.*, 2013 WL 1191180 (D.D.C. March 25, 2013), the court dismissed plaintiff's negligence claims against Capital One,

11

the loan servicer. The court noted that, while plaintiff "conclusorily alleges that Capital One had duties, fiduciary and otherwise to her, the Amended Complaint states no facts supporting the existence of a fiduciary or any other relationship that might give rise to a duty of care." *Id.* at *24 (internal quotations omitted). Here, Plaintiff simply states, in conclusory fashion, that, because Ocwen is a servicing agent "it stand[s] in a fiduciary capacity with respect to Edwards' monthly payments on her mortgage, her escrow account, and other related obligations, and by virtue of that position, owes a fiduciary duty to Edwards." *See* E.C.F. No. 1 at ¶100. This is insufficient to support a breach of fiduciary duty claim.

Significantly, other courts that have addressed claims for breach of fiduciary duty against loan servicers, such as Ocwen, have regularly held that no such duty exists and have dismissed or granted summary judgment on such claims. *See Allen v. Bank of America*, 2013 WL 1164898, *9 (D. Md. March 19, 2013) (holding that loan servicer did not owe borrowers a duty in tort); *Nool v. Homeq Servicing*, 653 F. Supp.2d 1047, 1056 (E.D. Cal. 2009) (dismissing claim for breach of fiduciary duty against, among others, loan servicer and stating that "there is no fiduciary relationship between plaintiff and any defendant"); *Elesh v. Ocwen Loan Servicing, LLC*, 2013 WL 1707934, *2 (N.D. Ill. Apr. 19, 2013) ("A fiduciary relationship .... may arise as a matter of law, such as between agent and principal, or it may be moral, social, domestic, or personal based upon the particular facts ...'[T]here is nothing inherent in business dealings between a [loan servicer] and a borrower from which springs a cognizable fiduciary relationship.'") (quoting *Citicorp Sav. of Ill. v. Rucker,* 692 N.E.2d 1319, 1325 (Ill.App.Ct.1998)); *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012) ("Furthermore, the statutes of limitations for Ms. Smith's claims were not tolled because Georgia law does not recognize a fiduciary relationship between Ocwen and Ms. Smith." (*quoting Baxter v. Fairfield*

*Fin. Servs., Inc.,* 307 Ga. App. 286, 293, 704 S.E.2d 423, 429 (2010)); *Lasker v. Ocwen Loan Servicing,* 2010 WL 743289 (E.D. Ark. Feb. 26, 2010)( "the Laskers' breach of fiduciary duty claim fails because Ocwen did not owe a fiduciary duty to the Laskers"). Because Ocwen does not have a fiduciary duty to Plaintiff, Count 6 must be dismissed with prejudice.

VI.  **Plaintiff Fails to State a Claim for Conversion (Count 7) Because She Fails to Identify the Specific Fund of Money Allegedly Converted by Ocwen**

Under D.C. law, the elements of conversion are "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto." *O'Callaghan v. Dist. of Columbia,* 741 F.Supp. 273, 279 (D.D.C.1990) (citing *Duggan v. Keto,* 554 A.2d 1126, 1137 (D.C.1989)). "Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money. A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money." *Curaflex Health Servs., Inc. v. Bruni,* 877 F.Supp. 30, 32 (D.D.C.1995) (citations omitted). Here, Plaintiff has not identified a specific identifiable fund.

According to the Plaintiff, her conversion claim is grounded on Ocwen's alleged misappropriation of $106,939.05 as part of the "Property settlement proceeds." See E.C.F. No. 1 at ¶105. However, this allegation is insufficient to state a claim for conversion because for example, and as detailed in the payoff quote attached as Exhibit "L" to the Complaint (E.C.F. No. 1-12) which was incorporated into the settlement statement when Plaintiff sold her property, Plaintiff still owed $58,554.26 on the property at the time of sale. Thus, it is clear from the Complaint that at least some portion of the $106,939.05 that was disbursed by the settlement agent was due and owing to the lender. Because Plaintiff fails to properly and clearly allege the unlawful exercise of ownership, dominion or control over a specific identifiable fund of money, she has failed to state a claim for conversion.

VII.  **Plaintiff Fails to State a Claim for Wrongful Foreclosure (Count 8) because Ocwen Did Not Foreclose on Her Property**

Strikingly, Plaintiff claims wrongful foreclosure, but does not allege a foreclosure occurred. To the contrary, she alleges that <u>she</u> sold the property. Plaintiff's claim for Wrongful Foreclosure must be dismissed because Ocwen did not foreclose on Plaintiff's property. Thus, under District of Columbia law, no claim lies against Ocwen for Wrongful Foreclosure. *See Robinson v. Deutsche Bank National Trust Co.*, 2013 WL 1191034, *4 (D.D.C. 2013) (dismissing plaintiff's claim for wrongful foreclosure and stating, "[A]n action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law.") (*quoting Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 505 (D.C. 1994)). Count 8 must be dismissed.

VIII. **Plaintiff Fails to State a Claim for Negligent Servicing (Count 9)**

Ocwen has been unable to locate any authority under D.C. law that recognizes an independent tort for negligent servicing. Any duty that Ocwen owed was to the lender with whom it had a servicing agreement. Any failure to perform its servicing obligations as required by that agreement would, at best, give rise to a breach of contract action by the lender, not the Plaintiff. Other courts have rejected claims for negligent servicing for this reason. *See, e.g., Costine v. BAC Home Loans*, 2013 WL 2248098, *7 (N.D. Ala. May 21, 2013) ("Alabama does not recognize a cause of action for negligent or wanton mortgage servicing... [T]he mortgage servicer's obligations arose from the mortgage and promissory note to which the parties agreed, not from the duty of reasonable care owed to members of the general public."); *Price v. America's Servicing Co.*, 2013 WL 1914939, *8 (N.D. Tex. May 9, 2013) (holding that Texas does not recognize a cause of action for negligent servicing and dismissing negligent servicing claim for failure to identify a tort duty owed by loan servicer to borrower); *Jackson v.*

*Countrywide Home Loans*, 2012 WL 777180, *6 (M.D. Ala. March 7, 2012) ("Plaintiff's claim for negligent or wanton loan servicing offers a breach of contract dish, but is listed on the menu as a tort...There is no duty owed to the general public to properly service mortgage accounts.").

In addition, while Plaintiff's claim in Count 9 is labeled "negligent servicing", the actual allegations are of negligent hiring and supervision. *See* E.C.F. No. 1 at 17. The negligent supervision allegations also fail to state a claim against Ocwen. "To establish a claim of negligent supervision, the plaintiff must establish that (1) the employee behaved in a dangerous or otherwise incompetent manner, (2) the employer knew or should have known its employee's dangerous or incompetent behavior and (3) the employer, "armed with that actual or constructive knowledge, failed to adequately supervised the employee." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C.2001) (citing *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C.1985)).

Furthermore, "as a threshold matter, a party alleging negligent supervision must also identify the individual over whom the defendant had a duty to supervise, such that the failure to properly exercise this duty would give rise to a negligent supervision claim by the plaintiff." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 100 (D.D.C. 2010) (citing *Brown*, 782 A.2d at 760 (indicating that a plaintiff must establish the defendant's knowledge of an employee's behavior under a negligent supervision theory)).

Here, the Complaint contains only the conclusory allegation that Ocwen knew or should known about its employee's incompetent conduct. But, Plaintiff fails to identify the employee whom Ocwen negligently supervised or trained. Thus, Plaintiff's putative negligent supervision claim, like its negligent servicing claim, fails to adequately state a claim for which relief can be granted.

IX. **Plaintiff Fails to Allege Facts Regarding Ocwen's Conduct or Her Damages to Support a Claim for Intentional Infliction of Emotional Distress (Count 10)**

Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") must be dismissed because her Complaint is devoid of factual allegations suggesting a plausible claim for this tort. To succeed on her IIED claim, the plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant[s] which (2) intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." *Khan v. Parsons Global Servs. Ltd.,* 521 F.3d 421, 428 (D.C.Cir. 2008) (citing *Darrow v. Dillingham & Murphy, LLP,* 902 A.2d 135, 139 (D.C.2006)).

Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) (quoting *Drejza v. Vaccaro,* 650 A.2d 1308, 1312 n. 10 (D.C.1994)). As a general matter, a case of IIED is made out only if "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Restatement (Second) of Torts § 46 cmt. d.

In *Busby v. Capital One, N.A.,* 772 F. Supp. 2d 268, 285-86 (D.D.C. 2011), plaintiff filed an amended complaint against her lender and loan servicer that included a claim for IIED arising from the handling of her mortgage. The conduct alleged included misrepresentations by the lender and improper assessment of escrow charges. *Id.* at 286. The court dismissed the IIED claim stating, "[t]his conduct, stemming from the parties' disagreements over their rights and obligations in a commercial loan transaction, does not plausibly rises to the level of 'atrocious' conduct going beyond all bounds of decency' as required to support an IIED claim." *Id.* (quoting *Williams v. Fed. Nat'l Mortg. Ass'n,* 2006 WL 1774252, at *10 (D.D.C. June 26, 2006) (concluding that the plaintiff's allegations of "active, conspiratorial, malicious and secretive

attempts [by the defendants] to curtail or terminate [the plaintiff's] prospective and ongoing business relationships" and the defendants' "efforts to damage her personal and business reputation all during a period when they gave false appearances of intending to do business with her" did not, as a matter of law, "rise to the level of extreme and outrageous conduct under District of Columbia law")). Similarly, here, a disagreement between Plaintiff and her lender or loan servicer regarding their rights and obligations relating to the mortgage on her rental property does not rise to the level of extreme or outrageous conduct necessary to support a claim for IIED.

Furthermore, while Plaintiff labels Ocwen's conduct as "illegal…egregious and outrageous" in conclusory fashion, she fails to allege facts suggesting that Ocwen intended to cause her emotional distress or acted recklessly when servicing her loan. *Id.* ("the amended complaint contained no factual allegations that the plaintiff suffered "severe emotional distress" as a result of the defendants' behavior.") (quoting *Khan,* 521 F.3d at 428).

Likewise, although Plaintiff alleges that Ocwen's conduct "caused severe emotional distress to Edwards, including anger, frustration, embarrassment, fear, humiliation, and unnecessary and excessive worry", E.C.F. No. 1 at ¶120, "these conclusory allegations are unsupported by any factual content established that the plaintiff suffered "emotional upset 'of so acute a nature that harmful physical consequences might be not unlikely to result.'" *Busby,* 772 F.Supp. 2d at 286 (quoting *Sere v. Grp. Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982)). Thus, Plaintiff's IIED claim must be dismissed.

X. **Plaintiff Fails to State a Claim under the D.C. Consumer Protection Procedures Act (Count 11) because Ocwen is not a Merchant and Plaintiff is not a Consumer As Defined by the Statute**

Plaintiff's claim against Ocwen under the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3904, *et seq.* ("DCCPPA") must fail because that statute applies

only to consumer-merchant transactions. Ocwen is not a "merchant" nor is Plaintiff a "consumer" under the DCCPPA.

### A. Ocwen is Not A Merchant as Defined by the D.C. Consumer Protection Act

Ocwen, whom Plaintiff describes in her Complaint as "the servicing agent for Edwards' residential loan" (*see* E.C.F. No. 1 at ¶5-7) is not a "merchant" as defined by the DCCPPA. Thus, Plaintiff's claims against Ocwen in Count 11 must be dismissed.

In *Busby v. Capital One, N.A.*, 772 F.Supp.2d 268 (D.D.C. 2011), plaintiff made claims under the DCCPPA against Capital One arising from its status as a loan servicer. *Id.* at 280. The court noted that the DCCPPA "was designed to police trade practices arising only out of consumer-merchant relationships." *Id.* at 279 (quoting *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981)). The court concluded that the amended complaint contained no allegations indicating the existence of a consumer-merchant relationship between plaintiff and Capital One. *Id.* at 279-280. The court acknowledged that the DCCPPA applied to lenders in residential mortgage transactions, *id.* at 280, but dismissed plaintiff's DCCPPA claim against Capital One because it was a loan servicer, not a "merchant" as defined by the DCCPPA. *See also Ali v. Tolbert*, 636 F.3d 622, 627-29, 2011 WL 691364, *5 (D.C. Cir. Mar. 1, 2011) (holding that an individual who facilitated residential property transaction was not a "merchant" for purposes of DCCPPA). Here, Plaintiff's claims against Ocwen arise from its role as a loan servicer, not a "merchant". Thus, Plaintiff's DCCPPA must be dismissed.

### B. Plaintiff is Not A Consumer as Defined by the D.C. Consumer Protection Act

Plaintiff also fails to state a claim under the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3904, *et seq.* ("DCCPPA") because Plaintiff is not a "consumer"

18

under the DCCPPA. In *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010), the court discussed the scope of protection provided by the DCCPPA, stating as follows:

> The CPPA provides that "[a] person ... may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia." D.C. Code § 28-3905(k)(1). Though the statute defines "person" broadly, *id.* § 28-3901(a)(1), the District of Columbia Court of Appeals has held that the CPPA protects only consumers, *see Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C.2006); *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 717 (D.C.2003).
>
> The CPPA defines "consumer" both as a noun and an adjective. In relevant part, the noun "consumer" means "a person who does or would ... receive consumer goods or services," D.C. Code § 28-3901(a)(2), or "a person who does or would provide the economic demand for" "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services," *id.* § 28-3901(a)(2), (6). When used as an adjective, as in the phrase "consumer goods," the word means "primarily for personal, household, or family use." *Id.* § 28-3901(a)(2). We read these provisions together to define "consumer" as a person who receives or demands goods or services that are primarily for personal, household, or family use.

*Id.* at 1043.

Here, Plaintiff concedes that the transaction at issue was related to an investment/business property. It was not primarily for personal, household, of family use. *See* E.C.F. No. 1-4 (stating that the property to which the loan related was not to be occupied by Plaintiff as her primary residence and that she took out the loan at issue "[t]o refinance outstanding debt for the property..."). Thus, the DCCPPA is inapplicable to Plaintiff's property and mortgage.

XI. **Ocwen Financial Corporation is Improperly Named as a Defendant and Should be Dismissed from this Lawsuit**

Ocwen Financial Corporation is not the loan servicer, has no direct link with the servicing of the loan at issue in the Complaint, and was improperly named as a Defendant, in this

lawsuit. Ocwen Loan Servicing, LLC is the entity that serviced the loan referenced in the Plaintiff's Complaint. Ocwen Financial Corporation is the parent of Ocwen Loan Servicing and was not involved in the servicing of the loan referenced in the Plaintiff's Complaint nor did it engage in any activity related to Plaintiff or the Property. In fact, the attachments to Plaintiff's Complaint, specifically, the Notice of Servicing Transfer sent by Litton (Exhibit E), Plaintiff's communications to Ocwen Loan Servicing, LLC (Exhibit G), the Notice of Default (Exhibit I), and the payoff statement attached as part of Exhibit K all identify Ocwen Loan Servicing, LLC. Ocwen Financial Corporation is not listed anywhere in the attachments. Therefore, Ocwen Financial Corporation is improperly named as a Defendant and should be dismissed from this lawsuit.

## CONCLUSION

As detailed, herein, Plaintiff fails to state a claim in any of the eleven counts in the Complaint and improperly names Ocwen Financial Corporation as a Defendant. Thus, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/
Christopher M. Corchiarino (Bar No. 487604)
Joseph B. Wolf (Bar No. MD27882)
Goodell DeVries Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
(410) 783-4038
cxc@gdldlaw.com
jbw@gdldlaw.com
*Counsel for Defendants, Ocwen Loan Servicing, LLC and Ocwen Financial Corporation*