UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANICE A. EDWARDS,                )
                                  )
        Plaintiff,                )
                                  )
        v.                        )     Case No. 13-cv-709 (RJL)
                                  )
OCWEN LOAN SERVICING, LLC and     )
OCWEN FINANCIAL CORPORATION,      )
                                  )
        Defendants.               )

**FILED**

**MAR 05 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(March _5_, 2014) [Dkt. #10]

Plaintiff Janice Edwards ("plaintiff" or "Edwards") is suing Ocwen Loan Servicing, LLC and Ocwen Financial Corporation (collectively "defendants" or "Ocwen") for various wrongs allegedly committed while servicing plaintiff's mortgage. *See generally* Compl. [Dkt. #1]. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the basis that plaintiff has failed to state a claim. *See* Defs.' Mot. to Dismiss [Dkt. #10]. Upon consideration of the parties' pleadings, relevant law, and the entire record therein, the motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND

Plaintiff's complaint alleges the following facts, which I accept as true and

---

[1] Plaintiff defines "Defendants" to include both Ocwen Loan Servicing, LLC and Ocwen Financial Corporation, *see* Compl. at p.1, and I see no basis for distinguishing between the two at this stage. I reject Ocwen's invitation to make factual findings about each entity's role in servicing Edwards' loan. *See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 19–20 [Dkt. #10-1].

construe in the light most favorable to her.[2] On February 18, 2003, Edwards closed on a $64,000 mortgage from SouthStar Funding, LLC ("SouthStar"), which was to be used to refinance debt on a home that plaintiff was not occupying, and did not intend to occupy, as a primary residence. *See* Compl. ¶ 20 & Exs. A, D [Dkt. ##10-1, 10-4]. SouthStar later assigned its servicing rights to Litton Loan Servicing, LP ("Litton"). *See id.* ¶ 22.

Although Edwards made her monthly escrow and mortgage payments and was not in default on the loan, Litton failed to remit tax payments for 2009, and the property was sold in a January 2011 public tax sale. *See id.* ¶¶ 24–25. In mid-2011, Ocwen acquired Litton. *See id.* ¶ 27. In late-2011, the purchaser of the property initiated foreclosure proceedings; however, Ocwen redeemed the property, and the Complaint to Foreclose the Right of Redemption was dismissed in mid-2012. *See id.* ¶¶ 30–33.

Defendants then force-placed hazard insurance on the property and told Edwards that she owed a total of $42,100.03, of which $7,813.76 was in default. *See id.* ¶¶ 35–38. Her monthly payment ballooned from $509.22 to $4,278.84. *See id.* ¶ 39. To avoid defaulting, plaintiff sold the property in March 2013 for $150,000, and defendants retained $106,939.05 of the proceeds. *See id.* ¶¶ 44, 47.

Plaintiff now claims that Ocwen "engaged in illegal, unfair and unlawful predatory mortgage servicing practices," entitling her to actual, statutory, and punitive damages,

---

[2] *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). I am also considering those documents that are "incorporated in the complaint," *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), and those "upon which the plaintiff's complaint necessarily relies," *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks omitted).

costs and attorney's fees, and pre- and post-judgment interest, all totaling $25,000,000. *See id.* ¶ 49 & p.19. Her complaint pleads eleven causes of action—two under federal statutes, one under a D.C. statute, and eight sounding in common law tort and contract.[3]

Defendants now contend that "[p]laintiff uses her [complaint] as a soap box," but "when all of the venomous rhetoric is scrubbed from [it], what remains is a Complaint in which [p]laintiff fails to state a claim." *See* Defs.' Mem at 1. I mostly agree, but find that plaintiff has stated a viable claim for breach of an escrow agent's fiduciary duty.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

---

[3] Claims one and two are under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq. See* Compl. ¶¶ 62–83. Claims three through ten are for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, wrongful foreclosure, negligent servicing, and intentional infliction of emotional distress. *See id.* ¶¶ 84–120. The eleventh claim is under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3904 *et seq. See id.* ¶¶ 121–127.

550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted); *see id.* (facts alleged "must be enough to raise a right to relief above the speculative level").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). I must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow*, 216 F.3d at 1113 (citation and internal quotation marks omitted). But I "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ANALYSIS

### A. Statutory Claims

Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), Real Estate Settlement Procedures Act ("RESPA"), and D.C.'s Consumer Protection Procedures Act ("CPPA") must be dismissed because her mortgage loan does not fall within the scope of those statutes. The FDCPA provisions on which plaintiff relies, 15 U.S.C. §§ 1692d and 1692e, apply only to the collection of "debt[s]," which are defined as "any obligation . . . to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for*

*personal, family, or household purposes,*" § 1692a(5) (emphasis added). Plaintiff has failed to plead facts sufficient to establish that her mortgage was a "debt" under the FDCPA. Although she states that the loan "was for personal, family or household purposes," Compl. ¶ 2, she puts no factual meat on that bare bone of statutory language. Moreover, it is clear from an exhibit attached to plaintiff's complaint that she did *not* reside at the subject address *nor* did she intend to do so when she refinanced the debt on that property, leaving me to speculate about what "personal, family, or household purposes" the property possibly could have served. See Compl., Ex. D [Dkt. #1-4].[4]

Plaintiff maintains that a debt's "purpose" is determined by looking at the owner's intent at time the collateral was purchased, not her intent at the time of refinancing. See Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 7 [Dkt. #13]. But even if that is true— and even if contemporaneous occupancy in the home is not required for a mortgage to be for personal, family, or household purposes—I am still left with no factual averments whatsoever about how plaintiff *ever* intended to use this property or loan.[5] Plaintiff's repeated recitations of the statutory language, see Compl. ¶ 2; Pl.'s Opp'n at 7, 8, 23, 24,

---

[4] Edwards says in her complaint that she "was at all times mentioned herein" living on the property. Compl. ¶ 1. That statement, however, is thoroughly contradicted by *at least* six exhibits that plaintiff attached to her complaint, which show that she resided and received mail in Greenbelt, Maryland in 2005, 2007, and 2009–2012, *see id.*, Exs. B, D, E, G, H, J [Dkt. ##1-2, 1-4, 1-5, 1-7, 1-8, 1-10]. "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011); *see also Thompson v. Ill. Dept. of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

[5] Plaintiff does not dispute that loans for rental and investment properties are not FDCPA "debts." *See, e.g., Klahn v. Clackamas Cnty. Bank*, No. 3:13cv621, 2013 WL 3834709, at *4 (D. Or. July 24, 2013); *Hardrick v. Canter*, No. 11cv3032, 2012 WL 5409739, at *3 (D. Md. Nov. 5, 2012); *Sparlin v. Select*

without more, are insufficient to allege that her mortgage loan meets the FDCPA's definition of a "debt." *See Hardy v. N. Leasing Sys., Inc.*, --- F. Supp. 2d ----, 2013 WL 3488489, at *5 (D.D.C. 2013) ("[N]otwithstanding the plaintiff's unsupported assertion that 'said equipment, if used, was for personal use only[,]' . . . she fails to establish that the underlying debt was a consumer debt primarily for personal, family, or household purposes." (citation omitted; quoting Am. Compl.)); *see also Twombly*, 550 U.S. at 555.

Plaintiff's RESPA and CPPA claims fail for the same reason. The RESPA "does not apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes," 12 U.S.C. § 2606(a), including mortgage loans on non-owner-occupied rental properties, *see, e.g., Henok v. Chase Home Fin., LLC*, 947 F. Supp. 2d 6, 2013 WL 2352104, at *1 (D.D.C. 2013). And the CPPA "protects only consumers," which our Circuit Court defines as persons "who receive[] or demand[] goods or services that are primarily for personal, household, or family use." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010) (citing *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006), and D.C. Code § 28-3901(a)(2)). Thus, plaintiff has not pleaded facts sufficient to support a plausible claim under the RESPA or the CPPA.[6]

---

*Portfolio Servicing, Inc.*, No. 11cv240, 2012 WL 527486, at *10 (D. Ariz. Feb. 17, 2012).

[6] *See, e.g., Hardy*, 2013 WL 3488489, at *6 (dismissing CPPA claim where complaint offered no facts to support statement that property was for personal use); *Abels v. Bank of Am., N.A.*, No. 2:11cv2904, 2013 WL 1163753, at *8 (E.D. Cal. Mar. 20, 2013) (dismissing RESPA claim in part because "it is unclear from plaintiff's amended complaint whether plaintiff's loan qualifies as a personal loan, as opposed to a business loan"); *Galindo v. Financo Fin., Inc.*, No. 07cv3991, 2008 WL 4452344, at *4 (N.D. Cal. Oct. 3, 2008) (dismissing RESPA claim where plaintiff "contends that there is no way to tell whether or not the loan was made for a business or personal purpose because she has not alleged any facts one way or the

## B. Contract and Tort Claims

### *1. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing.*

To state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing, a plaintiff must first and foremost allege that there was "a valid contract between the parties." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009); *see Brown v. District of Columbia*, 919 F. Supp. 2d 105, 113 & n.5 (D.D.C. 2013). Edwards dutifully recites this element in her third and fifth claims for relief, *see* Compl. ¶¶ 85, 95, but she does not plead facts in support. Instead, she alleges that Ocwen's acquisition of Litton (which years earlier had been assigned SouthStar's servicing rights) "created privity of contract between Edwards and the [d]efendants, as agents for Litton." *Id.* ¶¶ 22–29. Judges around the country—including at least two of my colleagues—have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract. *See, e.g., Petty v. Countrywide Home Loans, Inc.*, No. 3:12cv6677, 2013 WL 1837932, at *10 (S.D. W.Va., May 1, 2013) (collecting cases); *Robinson v. Deutsche Bank Nat'l Trust Co.*, 932 F. Supp. 2d 95, 109 (D.D.C. 2013); *Edmond v. Am. Educ. Servs.*, No. 10cv0578, 2010 WL 4269129, at *2 (D.D.C. Oct. 28, 2010). As a matter of law, then, plaintiff cannot proceed on a theory that Ocwen is liable as the agent of either Litton or SouthStar.[7]

---

other in the complaint"); *Atuahene v. Sears Mortg. Corp.*, No. 98cv930, 2000 WL 134326, at *5 (E.D. Pa. Feb. 4, 2000) (dismissing RESPA claim where "plaintiff fails to show that the primary purpose of his property was for something other than a commercial or business purpose").

[7] Defendants also cannot be held liable under the theory that "Ocwen was a party to the agreement because

7

Moreover, even if Ocwen can be held liable as the successor to assignee-Litton's servicing rights, *see* Compl. ¶ 22,[8] plaintiff does not state such a claim merely by alleging that SouthStar assigned undefined "servicing rights" to Litton and that Ocwen then breached some unidentified, un-cited, un-quoted contract terms.[9] Rather, she must plead facts linking Ocwen to the specific contractual terms that form the basis of her claim— *i.e.*, she must "point to which provisions of the [contract] .... imposed the obligations that defendants allegedly breached." *Robinson*, 932 F. Supp. 2d at 109; *Butler v. Fairbanks Capital*, No. 04cv367, 2005 WL 5108537, at *7 (D.D.C. Jan. 3, 2005) ("requir[ing] the plaintiff to amend her complaint to plead with more specificity the contract and provisions thereof that the defendant allegedly breached"). Plaintiff has not pleaded these necessary facts. Accordingly, her claims for breach of contract and breach

---

the principal was undisclosed in that SouthStar is a revoked corporation." Pl.'s Opp'n at 11. Under D.C. law, "[a]n agent who *enters into a contract without disclosing his principal* is personally liable on it." *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 369 (D.C. 1990) (emphasis added; internal quotation marks omitted). The February 2003 closing certification identifies SouthStar Funding, LLC as the counterparty, *see* Compl., Ex. D, and in her complaint, plaintiff identifies SouthStar as the lender, *see id.* ¶ 20. Litton and Ocwen became involved with the loan only *after* the contract was already entered. *See id.* ¶¶ 22, 27. Nowhere in her complaint does plaintiff allege that SouthStar was "undisclosed," either at the time the contract was entered or any relevant time thereafter. In a case like this, "[w]here a principal is disclosed, no liability will fall upon the agent for acts committed by the principal unless he binds himself for same by definite words or stipulation." *Rittenberg v. Donohoe Constr. Co., Inc.*, 426 A.2d 338, 341 (D.C. 1981) (citations omitted). Plaintiff does not identify any "definite words or stipulation" by which Ocwen bound itself to the contract.

[8] *See Kesten v. Ocwen Loan Servicing, LLC*, No. 11cv6981, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) (quoting *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 645 (7th Cir. 2007)); *cf. Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, No. 04cv2133, 2005 WL 3273979, at *3 (D.D.C. 2005) ("It is also well-settled that an assignee of a contract stands in the shoes of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract.").

[9] It is curious, at best, that the underlying contract is not among plaintiff's twelve exhibits.

of the implied covenant of good faith and fair dealing must be dismissed.

**2. *Unjust Enrichment.*** Under D.C. law, "'[u]njust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another.'" *Movahedi v. U.S. Bank, N.A.*, 853 F. Supp. 2d 19, 29 (D.D.C. 2012) (quoting *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992)). Defendants argue that Ocwen, as the loan servicer, was not a beneficiary of the note or deed of trust and therefore retained none of the "wrongful benefit[s]" that plaintiff alleges in her complaint. *See* Defs.' Mem at 10–11; Defs.' Reply Br. in Supp. of Mot. to Dismiss ("Defs.' Reply") at 7–8 [Dkt. #14]. Indeed, plaintiff's complaint is vague at best when it comes to what (if any) benefit Ocwen, as a loan servicer, inequitably retained. In fact, plaintiff's unjust enrichment count simply states that "[d]efendants received a wrongful benefit," *id.* ¶ 90, then offers the legal conclusion that "[d]efendants' wrongful retention of the benefit makes it inequitable for [d]efendants to retain the benefit without making restitution," *id.* ¶ 92, and then requests restitution in the form of an order "disgorging all profits, benefits and other compensation obtained by [d]efendants for their wrongful misconduct," *id.* ¶ 93. Such general allegations do not state a claim, especially against a loan servicer with no interest in the loan itself. *See Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 310 (D. Conn. 2012) ("There is insufficient factual content in support of this laundry list of grievances to allow the Court to draw the reasonable inference that [the loan servicer] was unjustly enriched on the basis of these generalized allegations.").

In other sections of the complaint, however, plaintiff does allege that Ocwen "*retain[ed]* $106,939.05 from the sale of the [p]roperty." Compl. ¶¶ 47, 87, 96, 101, 108 (emphasis added). Plaintiff fails, however, to provide any factual support for her allegation that the loan *servicer*—rather than the lender or noteholder—actually retained the proceeds of the sale. Plaintiff addresses this issue in her opposition brief, but in so doing, she asserts a factual basis for her "retention" allegation that is legally at odds with unjust enrichment. According to Edwards, "Ocwen was more than a servicer, but a *party to the agreement* because the terms and conditions of the Security Instrument bind the successors and assigns . . . of the [] principal." Pl.'s Opp'n at 14 (emphasis added). Unfortunately for Edwards, D.C. law "establishes that 'there can be no claim for unjust enrichment when an express contract exists between the parties.'" *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 207 (D.D.C. 2009) (quoting *Schiff v. Am. Ass'n of Retired Pers.*, 697 A.2d 1193, 1194 n.2 (D.C. 1997)). Indeed, Edwards relies on the supposed existence of a contract—and Ocwen's status as a successor and/or assignee of that contract—as the sole basis for her allegation that Ocwen wrongfully received and retained benefits. Because her legal theory is irreconcilable with the minimal facts that she offers in support, plaintiff's unjust enrichment claim must be dismissed.

***3. Breach of Fiduciary Duty.*** To recover damages for breach of fiduciary duty, Edwards must adequately allege "that a fiduciary duty existed; was violated; and proximately caused [her] injury." *World Class Constr. Mgmt. Grp. v. Baylor*, --- F. Supp.

2d ----, 2013 WL 4517180, at *3 (D.D.C. 2013) (citing *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 363 (D.C. 1984)). The complaint alleges that Ocwen, "as a servicing agent," owed fiduciary duties "with respect to Edwards' monthly payments on her mortgage, escrow account, and other related obligations." Compl. ¶ 100. Although defendants are correct that loan servicers, as such, owe no fiduciary duties to borrowers,[10] plaintiff identifies a narrower role that Ocwen allegedly played and that does give rise to fiduciary duties. *See* Pl.'s Opp'n at 14 ("A fiduciary duty arises when a servicer acts as an escrowee for a borrower's escrow account."); *see also* Compl, Ex. J (escrow disclosure statement identifying Ocwen as debt collector at bottom of second page). "[T]he D.C. Court of Appeals has held that escrow agents indeed have fiduciary duties to those parties who transfer funds into an escrow as well as those for whom the funds are held." *World Class Constr. Mgmt. Grp.*, 2013 WL 4517180, at *3 (citing *Wagman v. Lee*, 457 A.2d 401, 404–05 (D.C. 1983)). It also approvingly cited a case from the Arizona Court of Appeals, which characterizes the escrow relationship as one "of trust and confidence" that requires the escrow agent to "conduct transaction[s] with scrupulous honesty, skill and diligence." *Wagman*, 457 A.2d at 405 (citing *Brean v. N. Campbell Prof'l Bldg.*, 548 P.2d 1193, 1196 (Az. Ct. App. 1976)); *see also Aronoff v. Lenkin Co.*, 618 A.2d 669, 687 (D.C. 1992) (escrowee is fiduciary to both parties in transaction); *In re Austern*, 524 A.2d 680, 684 (D.C. 1987) ("Respondent, as co-escrow agent, owed a fiduciary duty to the

---

[10] *See, e.g., Elesh v. Ocwen Loan Servicing, LLC*, No. 12cv10356, 2013 WL 1707934, at *2 (N.D. Ill. Apr. 19, 2013); *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 732 (D. Md. 2013).

11

client's purchasers to protect their investment . . . .").[11]

The complaint frames the fiduciary relationship a bit too broadly—alleging that it arose from Ocwen's role as servicer—but it is nevertheless clear that plaintiff accuses Ocwen of engaging in dishonest, unfair, and unlawful mismanagement of her escrow account. *See* Compl. ¶ 101. Accordingly, I will not dismiss plaintiff's fiduciary duty claim to the extent it alleges breaches of those duties owed by escrow agents.

***4. Conversion.*** Under District of Columbia law, conversion is the "'unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property.'" *McNamara v. Picken*, --- F.Supp.2d ----, 2013 WL 3119321, at *1 (D.D.C. 2013) (quoting *Wash. Gas Light Co. v. Pub. Serv. Comm'n of D.C.*, 61 A.3d 662, 675 (D.C. 2013)). Although this tort typically applies to chattels, "[m]oney can be the subject of a conversion claim . . . if the plaintiff has the right to a *specific identifiable fund* of money." *Id.* (emphasis added; internal quotation marks omitted). Plaintiff identifies only one "specific identifiable fund" that she claims Ocwen converted: "$106,939.05 as part of the [p]roperty settlement proceeds." Compl. ¶ 105.[12]

Ocwen points to the payoff quote attached to plaintiff's complaint as evidence that

---

[11] Other courts have recognized that lenders and/or loan servicers owe fiduciary duties when they act as escrowees. *See, e.g., Smith v. GMAC Mortg. Corp.*, No. 5:06cv125-V, 2007 WL 2593148, at *9–10 (W.D.N.C. Sept. 5, 2007); *Vician v. Wells Fargo Home Mortg.*, No. 2:05cv144, 2006 WL 694740, at *7–8 (N.D. Ind. Mar. 16, 2006); *McDonald v. Wash. Mut. Bank, FA*, No. 99cv6884, 2000 WL 967994, at *5 (N.D. Ill. July 11, 2000); *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 800–01 (Tex. Ct. App. 1999). Without citing any authority, Ocwen contends that there is a meaningful distinction between cases in which the lender (as opposed to a non-lender) acts as loan servicer and escrow agent. *See* Defs.' Reply at 8. I can find no support for this distinction.

Edwards "still owed $58,554.26 on the property at the time of sale," meaning that "at least some portion of the $106,939.05 that was disbursed by the settlement agent was due and owing to the lender." Defs.' Mem. at 13 (citing Compl., Ex. L at 3 [Dkt. #1-12]. Ocwen is correct; plaintiff's own exhibit indicates that she owed more than $58,000 *in principal alone*. *See* Compl., Ex. L at 3. And mortgage and escrow payment documents attached to the complaint confirm that plaintiff's remaining principal in 2010—seven years after the loan was taken out and before any of the events giving rise to this complaint—was still $60,120.16. *See* Compl., Ex. B at 2. Plaintiff's assertion that Ocwen "converted *the entire* $106,939.05," Pl.'s Opp'n at 16 (emphasis added), is thus flatly contradicted by her own supporting documents, which show that plaintiff had no legal right to at least some—perhaps most—of that money.

A conversion claim cannot stand where, as here, plaintiff is owed *at most* some unspecified, unidentified portion of a larger pool of funds. *See Van Dorn Retail Mgmt., Inc. v. Sovran Bank/DC Nat'l, Inc.*, No. 90cv2974, 1991 WL 222061, at *7 (D.D.C. Oct. 9, 1991) ("[E]ven if plaintiff has a right to a portion of the proceeds . . . it still does not follow that plaintiff has a right to the 'identical,' 'specific' or 'identifiable' proceeds."). Indeed, as one of my colleagues has recognized "fungible cash is precisely the type of fund that may not underlie a claim for conversion." *McNamara*, 2013 WL 3119321, at *2 (distinguishing *Curaflex Health Servs., Inc. v. Bruni*, 877 F. Supp. 30 (D.D.C. 1995),

---

[12] Plaintiff drops an "*inter alia*" before she identifies the funds allegedly converted. Of course, a vague reference to "other things" fails to state a claim that requires specificity.

which involved specific funds held in a "lock box"); *cf. Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 145 n.14 (D.D.C. 2013) (allowing conversion claim where plaintiff "alleges conversion of *all* funds" (emphasis added)). I will therefore dismiss plaintiff's conversion claim.

**5. Wrongful Foreclosure.** "'[A]n action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law.'" *Robinson*, 932 F. Supp. 2d 95, 103 (quoting *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 505 (D.C.1994)). Plaintiff does not allege that a foreclosure took place, but rather that "[i]n a desperate attempt to avoid [d]efendants' alleged mortgage default and wrongful foreclosure, [she] was forced to sell her home." Compl. ¶ 44; *see also id.* ¶ 110 ("If this foreclosure were permitted to occur, it would be in direct violation of Edwards' rights."). D.C. law does not recognize an action for wrongful *attempted* foreclosure, *Busby*, 932 F. Supp. 2d at 141–42, so this claim too must be dismissed.

**6. Negligent Servicing.** Plaintiff's ninth claim for relief appears under the heading "negligent servicing," but it alleges that Ocwen breached its duty "to adequately train and supervise its staff of loan collectors and servicing agents in the proper and legal servicing of the mortgage loan." Compl. ¶ 113.[13] "In the District of Columbia, liability

---

[13] In her opposition, plaintiff argues that she "has not alleged negligent hiring or supervision," but rather "disclosed Ocwen's compensation structure to point out the perverse financial incentives Ocwen intentionally creates for its employees." Pl.'s Opp'n at 18. But my understanding of her claim does not come from the few paragraphs at the beginning of the complaint that discuss employee compensation. *See* Compl. ¶¶ 17–19. Rather, it comes directly from the text of "negligent servicing" count itself. *Id.* ¶¶ 113–

14

under a theory of negligent supervision arises 'when an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" *Flythe v. District of Columbia*, --- F. Supp. 2d ----, 2013 WL 5964008, at *12 (D.D.C. 2013) (quoting *Godfrey v. Iverson*, 559 F.3d 569, 571 (D.C. Cir. 2009)); *see also Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001). The complaint does not identify a single Ocwen employee or allege any other specific facts that might support these elements. Accordingly, this claim must be dismissed. *See Clark v. Computer Sci. Corp.*, --- F. Supp. 2d ----, 2013 WL 3982719, at *5 (D.D.C. 2013).

***7. Intentional Infliction of Emotional Distress.*** Finally, to state a claim for intentional infliction of emotional distress, plaintiff must allege that she suffered emotional distress as a result of Ocwen's "'extreme and outrageous conduct.'" *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 428 (D.C. Cir. 2008) (quoting *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006)). Unfortunately for plaintiff, a loan servicer's mismanagement of funds—even the "improper assessment of escrow charges and other penalties"—"does not plausibly rises to the level of atrocious conduct going beyond all bounds of decency as required to support an IIED claim." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 285–86 (D.D.C. 2011) (internal quotation marks omitted). This claim therefore must be dismissed, as well.

---

114. Plaintiff cannot now amend her complaint by reformulating this count in her opposition brief. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss [Dkt. #10] will be GRANTED in part and DENIED in part, and all of plaintiff's claims for relief except the Sixth (Breach of Fiduciary Duty) will be DISMISSED. An appropriate order shall accompany this Memorandum Opinion.

*[signature]*

RICHARD J. LEON
United States District Judge